## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
UNITED STATES *ex rel.* LOTT,                    )
                                                )
    Plaintiff,                 )
                                                )
       v.        )      **Case No. 16-cv-1546 (APM)**
                                                )
NOT-FOR-PROFIT HOSPITAL                          )
CORPORATION, *et al.*,                           )
                                                )
    Defendants.                )
_____ )

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.    INTRODUCTION

Plaintiff John Lott worked for about four months as the Chief Compliance Officer of Defendant Not-For-Profit Hospital Corporation, an entity created under District of Columbia law that operates United Medical Center. Plaintiff alleges that Defendant fired him for identifying and reporting a host of problems at the hospital in violation of federal and state laws. Defendant's Motion to Dismiss is now before the court. For the reasons set forth below, the court dismisses Plaintiff's federal claims and declines to exercise supplemental jurisdiction over his remaining state law claims. Defendant's Motion to Dismiss is therefore granted. The court, however, will grant Plaintiff one more opportunity to amend his pleading and therefore does not dismiss this action.

## II.    BACKGROUND

### A.    Factual Background

The District of Columbia created Defendant Not-for-Profit Hospital Corporation in 2010 for the purpose of acquiring the assets of the struggling, then-privately owned hospital, United Medical

Center, and ensuring its continued operation. *See* D.C. Code § 44-951.01 *et seq*. The legislation that created Defendant established it as "an instrumentality of the District government," "which shall have a separate legal existence within the District government." *Id*. § 44-951.02(a).

On April 6, 2015, Plaintiff John Lott began work as the Chief Compliance Officer at United Medical Center, the hospital operated by Defendant Not-For-Profit Hospital Corporation. Am. Compl., ECF No. 18 [hereinafter Am. Compl.], ¶¶ 15–16. When Plaintiff was hired, Defendant advised him that his term of employment would be at least six months long. *Id*. ¶¶ 16, 18. Plaintiff, however, was fired less than four months later on June 30, 2015. *Id*. ¶ 1.

As Chief Compliance Officer, Plaintiff's primary responsibility was to ensure that the hospital complied with federal and state laws. *Id*. ¶¶ 1, 18. Almost immediately, Lott began noticing problems at the hospital, ranging from unlocked doors to unsecured patient files. *Id*. ¶¶ 17, 19–20; *see also id*. ¶¶ 24, 28, 31, 40. Lott told Defendant's CEO, David Small, about many of the issues he spotted and e-mailed Defendant's Board of Directors about the need for a strong compliance program. *Id*. ¶¶ 37–38, 45.

One of the issues that came to Plaintiff's attention was a harassment complaint made by Sonia Edwards, a Human Resources employee, concerning her manager. *Id*. ¶ 24. As a result of the harassment, Edwards took leave from work as permitted under the Family Medical and Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and the companion leave statute under District of Columbia law, but was fired for "job abandonment" while on leave. Am. Compl. ¶ 41. Plaintiff alleges that he told Small on June 8, 2015, that Edwards's termination "maybe afoul" of federal and District of Columbia laws, that Defendant has an obligation to comply with the law, and that Defendant cannot fire employees who are on FMLA leave or who complain of harassment. *Id*. ¶ 42. Small agreed that Edwards's firing might have been wrongful and directed Plaintiff to contact Human

Resources to have Edwards rehired and promoted.  *Id*.  When Plaintiff spoke with the department

the next day, notwithstanding Small's directive, the Executive Vice President of Human Resources

refused to rehire Edwards.  *Id*. ¶ 43.

Another matter that came to Plaintiff's attention involved billing irregularities to the federal

Centers for Medicare & Medicaid Services ("CMS").   On June 30, 2015, Plaintiff advised

Defendant's Board of Directors that aspects of the hospital's billing practices did not comply with

federal Office of Inspector General ("OIG") guidelines.    *Id*. ¶ 45.   Plaintiff estimates that

Defendant's non-compliant practices resulted in the improper billing of nearly $40,000 per day to

CMS.  *Id*. ¶¶ 46, 62.  In a separate incident, on July 29, 2015, Plaintiff learned that the hospital

had been billing the federal government for patient treatment by a Dr. Cyril Allen, even though

Dr. Allen no longer worked at the hospital.  *Id*. ¶ 56.  Plaintiff alleges that he reported such conduct

as billing fraud, but he does not say to whom he made this disclosure.  *Id*. ¶ 57.  Someone—

Plaintiff does not identify who—raised the billing matter with the hospital's Chief Financial

Officer and the District of Columbia Office of Integrity and Oversight.  *Id*.  According to Plaintiff,

he "state[d] publicly"—he does not say when—that Defendant's IT department should identify the

person responsible for entering Dr. Allen's name, presumably, into the hospital's billing software.

*Id*.  The District of Columbia later repaid the federal government the amounts the hospital received

for work billed under Dr. Allen's name.  *Id*.

Three months into Plaintiff's tenure, a colleague warned Plaintiff that he might not last

through his six-month probationary period.  On July 16, 2015, the Executive Vice President of

Human Resources, Jackie Johnson, told Plaintiff that he was "not getting along with people and

for that reason you will not make your probation."  *Id*. ¶ 51.  Plaintiff brushed off the criticism,

contending that his job was to ensure compliance rather than be a popular figure.  *Id*.  The next

day, Andrew Davis replaced Small as Defendant's CEO. *Id.* ¶ 52. Plaintiff subsequently met with Davis to discuss problems at the hospital, at which time Davis told Plaintiff that he wanted Plaintiff to remain in his post. *Id.* ¶ 53. Yet, just two weeks later, on July 30, 2015, Davis fired Plaintiff because he was "not a good fit" and his work was "unsatisfactory." *Id.* ¶ 59.

### B.    Procedural History

Plaintiff filed this action against Defendant and the District of Columbia on July 29, 2016. Compl., ECF No. 1. Because Plaintiff asserted a claim under the False Claims Act ("FCA"), he filed his complaint under seal and served it upon the United States alone, as the Act requires, to afford it the opportunity to investigate the basis of his claim and to decide whether to intervene. *See* 31 U.S.C. § 3730(b). Upon investigating Plaintiff's FCA claim, the government decided not to intervene, leaving Plaintiff alone to pursue the FCA claim on behalf of the United States. *See* United States' Notice of Election to Decline Intervention, ECF No. 5.

On December 20, 2016, the court unsealed the Complaint and ordered service upon both Defendants, Not-For-Profit Hospital Corporation and the District of Columbia. *See* Order, Dec. 20, 2016, ECF No. 6. Upon completing service, Plaintiff amended his complaint on March 29, 2017, *see* Am. Compl., after which motions to dismiss followed from both Defendants, *see* District of Columbia Mot. to Dismiss, ECF No. 22; Not-For-Profit Hospital Corp. Mot. to Dismiss, ECF No. 23 [hereinafter Def.'s Mot.]. The court granted the District of Columbia's motion on May 8, 2017, after Lott did not oppose the District's dismissal. *See* Minute Order, May 8, 2017; Pl.'s Opp'n to D.C. Mot. to Dismiss, ECF No. 26. As a result, only Defendant Not-For-Profit Hospital's Motion to Dismiss remains before the court.

## III.   DISCUSSION

Plaintiff's Amended Complaint contains six counts. The first five allege that Defendant retaliated against Plaintiff in violation of: (1) the National Defense Authorization Act, 41 U.S.C. § 4712; (2) the FCA; (3) the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*; (4) the FMLA; and (5) the D.C. FMLA, D.C. Code § 32-501 *et seq. See generally* Am. Compl. ¶¶ 64–101.   Additionally, in Count II, Plaintiff alleges a substantive violation of the FCA, notwithstanding the United States' decision not to intervene. *See* Am. Compl. ¶¶ 70–71. Finally, Count VI alleges that Defendant breached its contract with Plaintiff by firing him before completing his sixth month of work. *Id.* ¶¶ 102–106. Plaintiff withdrew Count I after Defendant noted that Plaintiff had not exhausted his administrative remedies. *See* Pl.'s Opp'n to Def.'s 12(b)(6) Motion, ECF No. 25, [hereinafter Pl.'s Opp'n], at 1–2. Therefore, the FCA and FMLA counts—Counts II and IV—are Plaintiff's sole remaining federal claims.

The court evaluates these claims under the familiar pleading standard in Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive Defendant's motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "construe[s] the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

With these principles in mind, the court now turns to the merits of Defendant's Motion.

## A.      False Claims Act Claim

Defendant argues Plaintiff's FCA claims should be dismissed because: (1) Defendant is not an entity that can be held liable under the FCA's qui tam provision due to its legal status as an "instrumentality of the District government," D.C. Code. § 44-951.02(a); and (2) Plaintiff has not alleged the required elements of a FCA fraud claim. The court refrains from deciding, at this juncture, whether Defendant is subject to qui tam liability under the FCA, but concludes that dismissal is warranted because of Plaintiff's failure to allege a claim with the requisite specificity.

### 1.      *Whether Defendant is a "person" subject to liability under the qui tam provision of the FCA*

Defendant's first argument for dismissal concerns whether Defendant is subject to suit under the FCA's qui tam provision. The FCA provides that a private party may bring a qui tam action—that is, an action on behalf of the United States and himself—against "any *person* who . . . knowingly presents, or causes to be presented" to the United States government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a) (emphasis added); *see id.* §3730(b). This section of the FCA, however, does not define the term "person." Consequently, the text of the statute does not answer whether the District of Columbia and its related entities can be the subject of a qui tam action.

Supreme Court precedent fills the definitional void, at least in part. In *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, the Court held that neither States nor their agencies are "persons" for purposes of the qui tam provision of the FCA. 529 U.S. 765, 787–88 (2000). The Court explained that a textual reading of the FCA and its legislative history make clear that Congress did not intend for the qui tam provisions of the FCA to reach States and their agencies. *Id.* at 780–87. *Stevens*, however, left unanswered how to determine whether an entity is a state

agency that is not within the FCA's reach.  In the absence of guidance from the Supreme Court, lower courts unanimously have borrowed the "arm of the state" test used in the sovereign immunity context as a sorting mechanism.  *See, e.g.*, *United States & Commonwealth of Mass., ex rel. Willette v. Univ. of Mass, Worcester*, 812 F.3d 35, 39 (1st Cir.) (citing cases), *cert. denied*, 137 S. Ct. 617 (2017).  Whether an entity is an arm of the state rests on the relationship between the entity and the state.  *Cf. Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997) (stating that, in the sovereign immunity context, whether an entity is an arm of the state "can be answered only after considering the provisions of state law that define the agency's character").  The D.C. Circuit considers three factors to determine whether an entity is an arm of the state: "(1) the State's intent as to the status of the entity, including the functions performed by the entity; (2) the State's control over the entity; and (3) the entity's overall effects on the state treasury."  *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008).  Taken together, these three factors focus the arm-of-state inquiry on the "nature of the entity created by state law" and whether the State "structured" the entity to share in the State's immunity from suit.  *Id.* (citation omitted).

In asking this court to conclude that Defendant is immune from FCA qui tam liability, Defendant argues for a straightforward application of *Stevens* and the arm-of-the-state test.  This argument *presumes* the District of Columbia is a "state" and assigns significant weight to Defendant's authorizing statute, which defines Defendant as an "instrumentality" of the District of Columbia government that has a "separate legal existence *within* the District government." D.C. Code § 44–951.02(a) (emphasis added).  In responding, Plaintiff does not address the applicability of the arm-of-the-state test or its three factors to support his position that Defendant is subject to suit under the FCA.  Instead, Plaintiff contends that because Defendant is capable of

being "sued in its corporate name," D.C. Code § 44-951.06, it lacks sovereign immunity and therefore is subject to FCA liability, *see* Pl.'s Opp'n, at 7.

Both arguments miss the mark. First, Plaintiff fails to explain why sovereign immunity is relevant to the "person"-hood inquiry at issue, i.e., whether Defendant is a "person" for purposes of qui tam liability under the FCA. To the extent Plaintiff is raising sovereign immunity because of *Stevens*, he is misguided. *Stevens* held that states are immune from qui tam FCA actions because the statutory term "person" did not include states, and expressly reserved deciding whether the Eleventh Amendment would provide an *independent* basis for shielding states and their agencies from FCA qui tam claims. 529 U.S. at 787 ("We . . . express no view on the question whether an action in federal court by a *qui tam* relator against a State would run afoul of the Eleventh Amendment, but we note that there is 'a serious doubt' on that score." (citation omitted)). Thus, under *Stevens*, a state entity's amenability to suit due to a general waiver of sovereign immunity does not answer whether such entity is a "person" for purposes of the FCA's qui tam provision.

Defendant's argument also is flawed. If the District of Columbia is a "state" under the FCA's qui tam provision, the straightforward application of *Stevens* and the arm-of-the-state test, as advocated for by Defendant, might be appropriate. But whether *Stevens* applies is far from clear because the District of Columbia is not a state; the District is organized by statute as a "body corporate for municipal purposes" and possesses all the "powers of a municipal corporation." D.C. Code § 1-102. The District's status as a municipal corporation complicates the inquiry into Defendant's potential FCA liability because the Supreme Court has held in that municipalities and municipal corporations, unlike states and their agencies, *are* subject to FCA liability. *See Cook Cty. United States ex rel. Chandler*, 538 U.S. 119, 122 (2003). If the District is to be treated as a

municipal corporation here, a straightforward application of *Chandler* would lead to the conclusion that Defendant is subject to qui tam liability.

But whether *Chandler* governs in this case also is unclear. Although organized as a municipality, the "government of the District is not just another municipal corporation." *Feaster v. Vance*, 832 A.2d 1277, 1287 (D.C. 2003). The District has a "unique status" that is "truly sui generis in our governmental structure." *District of Columbia v. Carter*, 409 U.S. 418, 432 (1973). Sometimes it is likened to and treated as a state. *See, e.g.*, *Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1328 (D.C. Cir. 1978) ("In many respects the District is more akin to a state than to a municipality."); *Ruffin v. United States*, 76 A.3d 845, 857 (D.C. 2013) ("Although the District of Columbia has been constituted 'as a body corporate for municipal purposes' . . . [it] has been variously compared to or described as a state, territory, or municipality, and sometimes it has simply been called 'unique.'" (citation omitted)); *see also Parker v. District of Columbia*, 478 F.3d 370, 406 (D.C. Cir. 2007) (observing that courts "have consistently held that several constitutional provisions explicitly referring to citizens of 'States' do not apply to citizens of the District," but that "the District can parallel a 'State' within the meaning of [other] constitutional provisions"). Ultimately, however, "[w]hether the District of Columbia constitutes a 'State or Territory' within the meaning of any particular statutory or constitutional provision depends upon the character and aim of the specific provision involved." *Carter*, 409 U.S. at 420. No court has decided whether the District of Columbia is a "state" or a "municipality" for purposes of a qui tam action under the FCA.[1]

[1] In *United States ex rel. Settlemire v. District of Columbia*, the D.C. Circuit refrained from deciding whether the FCA qui tam provision applies to the District of Columbia. 198 F.3d 913, 921 (D.C. Cir. 1999). It has not revisited the issue since.

9

While the threshold question of whether the District of Columbia is subject to the qui tam provision of the FCA squarely presents itself in this case, the court declines to answer it in the case's present posture.   Neither party addresses the important distinction between "state" and "municipality" in its pleadings.   Defendant assumes without discussion that the District is a "state" and does not even cite *Chandler*, while Plaintiff does not even acknowledge the issue and merely counters by citing a single qui tam action against the District, in which the District's "personhood" was not discussed.   *See* Pl.'s Opp'n at 2 (citing *United States ex rel. Davis v. District of Columbia*, 793 F.3d 120 (D.C. Cir. 2015)).   Moreover, neither the District of Columbia nor the United States Attorney's Office for the District of Columbia has had an opportunity to express its views.   In light of the limited briefing and the significance of this issue, the court believes that it is inappropriate to decide the question of the District's status under the FCA's qui tam provision at this juncture. Instead, the court proceeds to the alternative ground on which Defendant seeks dismissal.

2.      *Whether Plaintiff has adequately pleaded FCA claims*

Defendant argues that Plaintiff's FCA claims—both his substantive and retaliation claims—must be dismissed because Plaintiff has not alleged sufficient facts concerning Defendant's allegedly fraudulent reimbursement submissions to support those claims.   The court agrees.   The court first addresses the sufficiency of Plaintiff's substantive FCA claim and then turns to his retaliation FCA claim.

a.      The substantive FCA claim

Substantive FCA claims, like common law fraud claims, must satisfy the heightened pleading standard of Rule 9(b).   *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002).   That rule provides that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).   The circumstances

constituting fraud include the time, place, and contents of the false representations, as well as the identity of persons involved in the alleged fraudulent conduct. *See Totten*, 286 F.3d at 552; *United States ex rel. Williams v. Martin-Baker Aircraft Co. Ltd.*, 389 F.3d 1251, 1257–58 (D.C. Cir. 2004). So, in order to satisfy Rule 9(b), Plaintiff must offer a "detailed description of the specific falsehoods that are the basis for his suit." *Totten*, 286 F.3d at 552.

Plaintiff's FCA claim proceeds under what is known as the "implied false certification theory" of liability. *See* Pl.'s Opp. at 8. Under that theory, FCA liability may attach when a defendant misrepresents or omits information about its noncompliance with certain conditions of payment. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 570 U.S. __, __, 136 S. Ct. 1989, 1995, 2001 (2016). To state an implied false certification claim, a plaintiff must allege that: (1) the defendant not only made a request for payment but also made specific representations about the goods or services provided, and (2) the defendant "fail[ed] to disclose noncompliance with *material* statutory, regulatory, or contractual requirements [which made] those representations misleading half-truths." *Id.* at 2001 (emphasis added). Consistent with Rule 9(b), those two conditions must be stated "with particularity." Fed. R. Civ. P. 9(b).

There are two independent reasons to dismiss Plaintiff's substantive FCA claim. First, Plaintiff fails to satisfy Rule 9(b)'s particularity requirement. Plaintiff's substantive FCA claim alleges that Defendant "violated the Federal False Claims Act by submitting claims for reimbursement from federal healthcare programs, including Medicare and Medicaid," despite knowledge that Defendant was ineligible for reimbursement because it was not in compliance with "the Office of Inspector General guidelines and other federal laws regarding healthcare facilities and nursing programs." Am. Compl. ¶ 70.[2] This general accusation is not, however, supported

---

[2] Plaintiff does not assert that his substantive FCA claims rest on Defendant's alleged billing for phantom services performed by Dr. Allen. *Cf.* Am. Compl. ¶ 70.

by specific factual allegations contained elsewhere in the Amended Complaint. The complaint does not, for instance, "identify . . . who precisely was involved in the fraudulent activity" and their roles in the fraudulent scheme. *Williams*, 389 F.3d at 1257. Worse, Plaintiff fails to identify the precise OIG guidelines or federal laws that Defendant allegedly violated when submitting claims for reimbursement and consequently does not allege the "fact[s] misrepresented" that form the basis of his substantive FCA claim. *Id*. The Amended Compliant therefore alleges none of the "circumstances constituting fraud" with particularity, as required by Rule 9(b).

Second, the Amended Complaint does not allege facts that satisfy either of the two requirements to plead an implied false certification theory of liability. Plaintiff does not aver the "specific representations about the goods or services" that Defendant provided that form the basis of his fraud claim. *Universal Health Servs.*, 136 S. Ct. at 2001. The closest Plaintiff comes to any such detail is the assertion that Defendant billed CMS "for the skilled nursing facility and hospital," Am. Compl. ¶ 62, but such an allegation is not nearly "specific" enough, *cf. Universal Health Servs.*, 136 S. Ct. at 2000 (noting that the plaintiff's complaint alleged the specific types of treatment and therapies that formed the basis for his claim, as well as the corresponding payment and other codes presented for reimbursement). Nor has Plaintiff alleged facts that would support the materiality of Defendant's non-compliance. As noted, Plaintiff does not specify the OIG guidelines or federal laws as to which Defendant failed to disclose its alleged noncompliance. *See generally* Am. Compl. ¶¶ 62, 70. Plaintiff makes some effort to bring clarity in his Opposition, claiming that Defendant violated "HIPAA, and other federal and state regulations, including . . . the Affordable Care Act," Pl.'s Opp'n at 9, but this allegation, even if Plaintiff had made it in his complaint, also lacks specificity, *see Universal Health Servs.*, 136 S. Ct. at 2002 (noting that "billing parties are often subject to thousands of complex statutory and regulatory provisions"). Thus, lacking any allegation about the particular

laws or regulations Defendant allegedly violated, Plaintiff cannot—and does not—allege that Defendant's compliance with any rule was a *material* condition of reimbursement. *See id.* at 2001. Plaintiff's substantive FCA claim, as presently pleaded, therefore fails.

b.    The retaliation FCA claim

Plaintiff's FCA retaliation claim meets the same fate. The whistleblower provision of the FCA's qui tam section grants a cause of action to persons who are retaliated against for their "lawful acts . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). This claim requires the employee show that "(1) he engaged in protected activity . . . ; and (2) he was discriminated against 'because of' that activity." *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998). The second element requires the employee establish that the employer "had knowledge the employee was engaged in protected activity," and the employer's retaliation was motivated, at least in part, by the employee's protected activity. *Id.* (citation omitted).

Plaintiff has not alleged facts that support an FCA retaliation claim. For starters, it is not at all clear what protected activity Plaintiff claims to have engaged in under the FCA. Plaintiff cites an email that he sent to the Board of Directors, *see* Am. Compl. ¶ 45, however that email does not identify any particular violation of the FCA that Plaintiff sought to prevent. In addition, Plaintiff fails to plead facts that would show *Defendant knew* that Plaintiff had engaged in protected activity, whatever that activity might have been. According to Plaintiff's pleading, when he first met with Defendant's new CEO on July 20, 2015, Plaintiff claims to have advised him about a number of problems at the hospital, but fraudulent billing was not among them. *Cf. Id.* ¶ 53. The new CEO fired Plaintiff ten days later, yet there is nothing in the Amended Complaint that plausibly alleges either the CEO or anyone that might have advised the CEO knew about any activity by Plaintiff

protected under the FCA.  As a result of these pleading deficiencies, Plaintiff's FCA retaliation claim also is dismissed.

### B.    Family Medical Leave Act Claim

The court now turns to Plaintiff's other federal claim under the FMLA.  Plaintiff's FMLA claim accuses Defendant of retaliating against him, by firing him, after he "requested that [Defendant] reinstate Sonia Edwards, whom [Defendant] terminated for taking FMLA leave." Am. Compl. ¶ 84; *see also* 29 U.S.C. § 2615(a)(2) (prohibiting employers from discharging individuals for opposing unlawful practices).  Defendant maintains that Plaintiff's remarks to Small about Edwards's termination was "nothing more than his daily fulfillment" of his compliance officer position and thus is outside of the protections of the FMLA.  Def.'s Mot. at 24. Plaintiff urges the court to take a different course.  He argues that supervisory employees are not, by virtue of their positions and responsibilities, excluded from protection against retaliation under the FMLA.   Instead, he asks the court to focus on whether the employee engaged in oppositional conduct, without regard to the employee's job duties.  Pl.'s Opp'n at 10–11.

Defendant's argument—sometimes referred to as the "manager rule"—stems from case law interpreting the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA") and Title VII. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1485–87 (10th Cir. 1996); *Brush v. Sears Holdings Corp.*, 466 Fed. App'x 781, 787 (11th Cir. 2012); *see also Littlejohn v. City of New York*, 795 F.3d 297, 317 n.16 (2d Cir. 2015) (describing the "manager rule" used in other circuits).  As to those statutes, some courts have held that an employee is not protected from retaliation for reporting concerns about an employer's potential violations of the law, if the employee is acting pursuant to her job duties.  *McKenzie*, 94 F.3d at 1485–87.  Instead, the employee must "take a position adverse

to her employer or assert [a] right[ ] under the [law]." *Id.* at 1487.  The D.C. Circuit, however, has yet to embrace this framework in the FLSA, Title VII, or FMLA contexts.

This court need not decide whether an employee's mere fulfillment of job duties, when those duties involve reporting wrongdoing, may constitute "protected activity" under the FMLA, because Plaintiff's claim fails even under his own conduct-focused theory.  Plaintiff relies on the Fourth Circuit's decision in *DeMasters v. Carilion Clinic*, a Title VII case, to support his argument that an employee acting in fulfillment of his duties may be protected from retaliation, provided that the employee opposed his employer's practice or action.  *See* 796 F.3d 409, 422–23 (4th Cir. 2015).  *DeMasters* rejected the application of the "manager's rule" and held that a consultant whose job was to counsel employees asserting claims of discrimination could himself bring a claim of retaliation under Title VII because the consultant had engaged in protected activity by undertaking a continuous course of oppositional conduct that conveyed to the employer the consultant's belief that the employer was violating the law.  *See id.* at 418, 421–22.  In adopting an "expansive" view of an employee's protected activity, the court explained that such activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities" regarding an unlawful employment practice.  *Id.* at 413, 417.  But *DeMasters* also emphasized the need to consider the "employee's course of conduct as a whole," and suggested that sustained opposition—rather than an isolated act—was necessary to state a claim.  *Id.* at 413, 418.

Plaintiff's claimed protected action falls short of the *DeMasters* definition of oppositional conduct.  Plaintiff alleges only a single protected activity—that he once told Defendant's CEO, Small, during a meeting "that [Edwards's firing] *maybe* [ran] afoul of the FMLA, the D.C. FMLA & DCHRA laws," and that the hospital needed to comply with federal and District of Columbia

laws. Am. Compl. ¶ 42 (emphasis added). Even viewing that allegation in the light most favorable to Plaintiff, as this court must, Plaintiff did no more than offer a half-hearted opinion—he qualified his view of a law violation with the word "maybe"—about Defendant's potential liability for firing Edwards and gave rather obvious advice that Defendant had to comply with the law. After the Executive Vice President of Human Resources refused Small's order to reinstate Edwards, Plaintiff does not allege that he undertook any oppositional action, such as filing a formal grievance, revisiting the matter with Small, reporting the action to an independent entity, or otherwise calling attention to the action. Cf. DeMasters, 796 F.3d at 417. Plaintiff's single expression of a qualified opinion of potential liability is a far cry from the type of full-throated opposition DeMasters contemplated as qualifying for protection. Accordingly, Plaintiff has failed to state a plausible claim of retaliation under the FMLA.[3]

## C.  District of Columbia Statutory and Common Law Claims

Having dismissed Plaintiff's federal law claims, the court declines, at this juncture, to exercise jurisdiction over Plaintiff's remaining claims that arise under District of Columbia law. See 28 U.S.C. § 1367(c); Anderson v. Holder, 647 F.3d 1165, 1174 (D.C. Cir. 2011) (permitting district court to decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has general jurisdiction). Accordingly, the court does not address Defendant's arguments for dismissing Plaintiff's state law claims.

---

[3] There exists another ground for dismissal. Plaintiff does not allege that Defendant's agent who actually terminated Plaintiff—Small's replacement, Davis—was aware of Plaintiff's opinion about Edwards's firing. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding an alleged discriminating official's knowledge of prior protected activity must precede the official's contemplating adverse action). Plaintiff alleges that he told Davis about "matters effecting [sic] [the hospital] in this case, unsecured medical or patient records, theft or misplacement of patient property, questionable patient deaths and wrongful terminations," but says nothing about Edwards's firing which, at that point, was more than a month old. Am. Compl. ¶ 53. Because Plaintiff fails to allege that the person who terminated him was aware of his defense of Edwards, his retaliation claim falters for that independent reason.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted.  Plaintiff's FCA (Count II) and FMLA (Count III) claims are dismissed without prejudice.  Plaintiff's District of Columbia statutory and common law (Counts IV through VI) claims likewise are dismissed without prejudice.

The court will not, however, dismiss Plaintiff's action at this time.  The court will give Plaintiff one more opportunity to amend his complaint to plead his federal claims.  If Plaintiff chooses to amend, he shall file a motion for leave to amend, along with a proposed Second Amended Complaint and a redline comparison to the Amended Complaint, no later than November 28, 2017.

Dated: November 8, 2017

Amit P. Mehta
United States District Judge