UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN LOTT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-cv-1546 (APM) |
| NOT-FOR-PROFIT HOSPITAL CORPORATION, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Not-for-Profit Hospital Corporation ("NFPHC") once more moves to dismiss Plaintiff John Lott's complaint[1] for failure to state a claim. *See* Def.'s Mot. to Dismiss, ECF No. 33, Mem. of Pts. & Auths. in Supp. of Mot. to Dismiss, ECF No. 33-1 [hereinafter Def.'s Mem.]. For the reasons that follow, Defendant's Motion is denied.

I.

As the parties are familiar with the factual allegations and procedural history of this case, the court does not start with a summary recitation of those matters. The court does, however, make clear what it has considered in evaluating Defendant's Motion to Dismiss.

"In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia,*

---

[1] Previously, on November 8, 2017, the court dismissed Plaintiff's Amended Complaint for failure to state any federal claims and declined to exercise supplemental jurisdiction over his District of Columbia law claims, but afforded Plaintiff an opportunity to amend his pleading. *See* Mem. Op. & Order, ECF No. 30. On November 28, 2017, Plaintiff then filed a Second Amended Complaint, which is now the operative pleading in this matter. *See generally* Second Am. Compl., ECF No. 31.

*Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (citation omitted and alterations original). Here, Plaintiff attached to his opposition brief multiple exhibits for the court's consideration, including, most significantly, a sworn affidavit from Plaintiff himself and a Letter of Determination to Sonia Edwards, a former NFPHC employee, from the D.C. Office of Human Rights. *See* Pl.'s Opp'n, ECF No. 34, Exs. C, D, ECF Nos. 34-3, 34-4.[2] Neither the sworn affidavit nor the Letter of Determination are attached to or incorporated by reference in the Second Amended Complaint, and neither are judicially noticeable. Accordingly, those exhibits are not properly before the court. Therefore, in evaluating Defendant's Motion, the court has considered the allegations set forth in Plaintiff's Second Amended Complaint and the exhibits thereto, but no more.

## II.

### A.

The court begins with Plaintiff's sole federal cause of action:[3] retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) (Count III).[4] The court initially dismissed Plaintiff's FMLA retaliation claim for failure to sufficiently allege "oppositional" conduct, without deciding whether an employee who alleges retaliation based on his fulfillment of his normal job duties is protected by the FMLA. *See* Mem. Op., ECF No. 30, at 14–16. Defendant

---

[2] The provenance of Plaintiff's sworn affidavit is, at best, ambiguous. Plaintiff claims that the affidavit shows his "'his full throated opposition' to Sonia Edwards' termination in Edwards' retaliation filing in this court, in the matter of *Edwards v. NFPHC*, Case No. 17-cv-01515 (D.D.C. 2017, Jackson, J.)." Pl.'s Opp'n at 4. But, as Defendant correctly points out, Plaintiff's affidavit appears nowhere on the docket in the *Edwards* case. *See generally* Dkt., *Edwards v. NFPHC*, Case No. 17-cv-01515 (D.D.C.). Giving Plaintiff the benefit of the doubt, the court understands Plaintiff to have stated that he only *prepared* the affidavit for use in the Edwards litigation and not to have actually filed it.

[3] In earlier versions of his complaint, Plaintiff also asserted both substantive and retaliation claims under the federal False Claims Act ("FCA"). *See generally* Compl.. ECF No. 1; Am. Compl., ECF No. 18. No FCA claim appears in the Second Amended Complaint.

[4] In this jurisdiction, an FMLA retaliation claim is available under both 29 U.S.C. § 2615(a)(1) and (a)(2). *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015). Here, both parties have briefed Plaintiff's FMLA retaliation claim as arising under § 2615(a)(2) alone. The court, therefore, does not consider whether Plaintiff has stated a retaliation claim under § 2615(a)(1).

argues that Plaintiff's present claim fails to cure its pleading deficiency. Def.'s Mem. at 5–10. The court disagrees.

The FMLA makes it illegal to retaliate against an employee who has "oppos[ed] any practice made unlawful" under the Act. 29 U.S.C. § 2615(a)(2). Although the Supreme Court has not defined what "oppose" means specifically under the FMLA, it has interpreted the same term in Title VII's similarly worded anti-retaliation provision. *Crawford v. Metro. Gov't of Nashville & Davison Cty., Tenn.*, 555 U.S. 271, 276 (2009); *see Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (noting that the FMLA's anti-retaliation provision under § 2615(a)(2) "is intended to be construed in the same manner" as Title VII's anti-retaliation provision (internal citation omitted)). In *Crawford*, the Supreme Court held that the term "oppose" carries its ordinary dictionary definition: "[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand." 555 U.S. at 276 (quoting Webster's New International Dictionary 1710 (2d ed. 1957)). Commenting on that broad construct, the Court made the following observation, which is particularly relevant to this case: "When an employee communicates to her employer a belief that the employer has engaged in a form of employer discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Id.* (cleaned up). The employee's "belief" that the employer's conduct was unlawful need not be certain; rather, a "good faith and reasonable belief" that the employer has engaged in discriminatory conduct will do. *See Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013).

Applying those principles here, Plaintiff's retaliation claim passes muster. Plaintiff alleges that, upon learning that NFPHC had fired Edwards while on FMLA leave, he met with NFPHC's CEO, David Small, on June 8, 2015, "to discuss the termination of Edwards and that [it runs] afoul of the FMLA, the D.C. FMLA & [District of Columbia Human Rights Act ("DCHRA")] laws."

3

Second Am. Compl. ¶ 48. Plaintiff apparently was persuasive, because Small "admitted that [Edwards's] termination may have been unlawful and instructed Lott to contract HR to reinstate her and to promote her '*upward and outward.*'" *Id.* The next day, Plaintiff asked Executive Vice President of Human Resources Jackie Johnson to "rescind" Edwards's termination, but Johnson refused, stating: "Sonia is nasty and has to stay gone." *Id.* ¶ 49. A little more than a month later, NFPHC installed a new CEO, Andrew Davis. *Id.* ¶ 58. Plaintiff alleges that, on July 20, 2015, he discussed Edwards's "illegal termination" with Davis and advised him that Edwards needed to be re-hired, but that Johnson was "thwarting his efforts to reinstate [her]." *Id.* ¶¶ 59–60. Ten days later, Davis would fire Plaintiff under circumstances that make a retaliatory motive plausible. On July 30, 2015, Plaintiff was directed to meet with Davis. *Id.* ¶ 69. Johnson was present for the meeting, and Plaintiff objected to her attendance, "because he (Lott) is investigating [Executive Vice President Pamela] Lee for the unlawful termination of Edwards and that EVP Jackie Johnson has a direct conflict of interest on this matter." *Id.* According to Plaintiff, his request to excuse Johnson was ignored and instead Davis announced Plaintiff's termination, telling Plaintiff that he is "not a good fit" and that his work is "unsatisfactory," even though only days earlier Davis had commended Plaintiff for his performance. *Id.* Taking these allegations to be true, and viewing them in the light most favorable to him, Plaintiff "communicate[d] to [his] employer a belief that the employer ha[d] engaged in . . . a form of employment discrimination." *Crawford*, 555 U.S. at 276. Therefore, Plaintiff has sufficiently pleaded oppositional conduct for purposes of his FMLA retaliation claim.

Defendant points to this court's prior ruling in arguing that Plaintiff's revised pleading of protected activity still falls short. In particular, Defendant references the portion of the court's decision in which the court stated that Plaintiff's "single expression of a qualified opinion of

4

potential liability is a far cry from the type of full-throated opposition *DeMasters* [*v. Carilion Clinic*, 796 F.3d 409 (4th Cir. 2015)] contemplated." Mem. Op. at 16; *see* Def.'s Mem. at 7 (citing Mem. Op. at 15–16). Though Defendant's reliance on the court's earlier decision is understandable, the reference to the "full-throated opposition *DeMasters* contemplated" was not meant to suggest that *only* such conduct qualifies as protected activity. Rather, the court used *DeMasters*—a case that Plaintiff had cited—as illustrating how Plaintiff's initial pleading of oppositional action was insufficient. *See* Mem. Op. at 15 (noting that "Plaintiff's claim fails under his own conduct-focused theory," which relied on *DeMasters*). As *Crawford* makes clear, "full-throated opposition" is not required to qualify for protection under Title VII's—and, by extension, the FMLA's—anti-retaliation provision. Rather, a good faith and reasonable expression of belief that the employee's employer has engaged in discrimination will do. Plaintiff's pleading overcomes that low bar.[5]

B.

Having found that Plaintiff has sufficiently alleged protected activity, the court must resolve the question left unaddressed in its prior decision: Whether the "manager rule" nevertheless precludes Plaintiff from asserting a retaliation claim because his alleged oppositional conduct was part of his regular job duties. *See* Def.'s Mem. at 7 n.4. As the court described it before, "some courts have held," under what is known as the "manager rule," "that an employee is not protected from retaliation for reporting concerns about an employer's potential violations of the law, if the employee is acting pursuant to her job duties." Mem. Op. at 14. Although this "rule" arose in the context of the Fair Labor Standards Act's anti-retaliation protections, *see*

---

[5] Defendant also seeks to dismiss Plaintiff's retaliation claims under the DCHRA, D.C. Code § 2-1402.61 (Count II), and the D.C. FMLA, D.C. Code § 32-507(b) (Count IV), for failure to allege protected activity. Def.'s Mem. at 5–6. Plaintiff's pleading of those claims likewise is sufficient for the reasons just discussed.

*Littlejohn v. City of New York*, 795 F.3d 297, 317 n.16 (2d Cir. 2015), Defendant urges the court to apply it in the FMLA context. *See* Def.'s Mem. at 7 n. 4. The court declines to do so. The court is persuaded by the comprehensive rationale set forth by the Fourth Circuit in *DeMasters* for rejecting the manager rule's application in the Title VII context, *see DeMasters*, 796 F.3d at 421–24, and finds that the rationale applies with equal force to FMLA retaliation claims, *cf. Gordon*, 778 F.3d at 161. Therefore, the manager rule does not foreclose Plaintiff's retaliation claim under the FMLA.

C.

Defendant separately moves to dismiss Plaintiff's DCHRA cause of action for failure to state a claim. *See* Def.'s Mem. at 10–12. Defendant contends that, because Plaintiff has not adequately alleged "that he opposed conduct made unlawful by the DCHRA," Plaintiff's DCHRA claim must proceed under the separate theory that Defendant retaliated against him for "aid[ing] or encourag[ing]," D.C. Code § 2-1402.61(a), Edwards in exercising her DCHRA rights. According to Defendant, Plaintiff has failed to allege facts to support such a theory. Def.'s Mem. at 10. As the court already has ruled, however, Plaintiff has successfully alleged oppositional conduct that is prohibited by the DCHRA. *See* D.C. Code § 2-1402.61(b) (prohibiting employers from retaliating against a person "because that person has opposed any practice made unlawful by this chapter"). Accordingly, Plaintiff may proceed with his DCHRA retaliation claim, even in the absence of allegations that he aided or encouraged Edwards in exercising her rights.

II.

Turning to Plaintiff's claim under the D.C. Whistleblower Protection Act ("DCWPA"), Defendant moves to dismiss for two reasons: (1) because Plaintiff is not an "employee" for purposes of the DCWPA, Def.'s Mem. at 13; *see* D.C. Code §§ 1-615.52, 1-615.53; and

(2) because NFPHC cannot be sued under the DCWPA, only the "District" can, Def.'s Mem. at 14; *see* D.C. Code § 1-615.54. Neither argument is persuasive.

As to whether Plaintiff is an "employee" for purposes of the DCWPA, the statute provides that "[a]n employee aggrieved by a violation of § 1-615.53 may bring a civil action." D.C. Code § 1-615.54(a)(1). The DCWPA defines "employee" to mean:

> [A]ny person who is a former or current District employee, or an applicant for employment by the District government, including but not limited to employees of subordinate agencies, independent agencies, the District of Columbia Board of Education, the Board of Trustees of the University of the District of Columbia, the District of Columbia Housing Authority, and the Metropolitan Police Department, but excluding employees of the Council of the District of Columbia.

*Id.* § 1-615.52(3). This broad definition of "employee" easily reaches those employed by NFPHC. First, the DCWPA's protections extend to those persons employed not only by sub-agencies of the District of Columbia government, but also by "independent agencies," such as the Board of Trustees of the University of the District of Columbia, *see id.* § 38-1202.01; "independent authorit[ies]," such as D.C. Housing Authority, *see id.* § 6-202; and elected bodies, such as the D.C. Board of Education, *see id.* § 38-2651. The plain text of the statute provides no reason why, as an "instrumentality" of the District government, *id.* § 44-951.02, NFPHC should be treated any differently from the government entities listed in the statute. Moreover, the definition's use of the phrase "including but not limited to" makes clear that the D.C. Council did not intend to restrict the definition of "employee" to only those government-related entities identified in the statute. *Cf. id.* § 1-301.45 (defining "include" and "including" to mean "includes, but not limited to" and "including, but not limited to"). Thus, the fact that NFPHC is not expressly identified in the statute does not remove its employees from the DCWPA's protections. Finally, the D.C. Council clearly knew how to use words of exclusion—after all, it removed its own employees from the statute's

7

purview—yet it did not do the same for NFPHC, either in the DCWPA itself or in the NFPHC's organic statute. *See generally id.* § 44-951.01 *et seq*. In view of the DCWPA's broad construct, a person employed by NFPHC—"an instrumentality of the District government . . . [with] a separate legal existence within the District government," *id.* § 44-951.01 *et seq.*—easily fits within the DCWPA's definition of "employee."

Defendant's argument to the contrary rests on the fact that its employees are statutorily excluded from the District's personnel merits system, and that NFPHC has the authority to set its own employment policies, practices, and procedures and to establish its own personnel system. Def.'s Mem. at 13; *see id.* § 44-951.08. That limited exemption, however, cannot carry the weight Defendant accords it. If the D.C. Council had meant to remove whistleblower protections for NFPHC employees, presumably it would have done so explicitly. Indeed, it would be odd for the Council to have denied Defendant's employees such substantial rights by implication through exemption from a completely different statute. *See Newell-Brinkley v. Walton*, 84 A.3d 53, 58 (D.C. 2014) (finding that "it is highly unlikely that the Council would have altered preexisting law in so fundamental a way implicitly rather than explicitly"). The court therefore rejects Defendant's reading of the DCWPA to exclude its employees.

The court likewise disagrees with Defendant's assertion that it cannot be sued under the DCWPA because the statute authorizes suit only against "the District." *See* Def.'s Mem. at 14; D.C. Code § 1-615.54(a)(1).[6] Other than a hyper-technical reading of the statute, Defendant offers no other argument to support its position. *See* Def.'s Mem. at 14. The court, of course, must read statutes to avoid absurd results. *See Mova Pharma. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C.

---

[6] Although not relevant here, the DCWPA also authorizes suit against "any District employee, supervisor, or official," "in his or her personal capacity," "having personal involvement in the prohibited personnel action." D.C. Code § 1-615.54(a)(1).

8

Cir. 1998). Adopting Defendant's view would mean that the DCWPA confers whistleblower protection upon NFPHC employees, yet denies them the right to sue their employer. Moreover, Defendant's reading would lead to the nonsensical result that some of the most important remedies available to an aggrieved employee for violations—such as reinstatement, restoration of lost benefits, and back pay—would be denied employees of NFPHC. This would hold true not only for NFPHC employees, but also for employees of independent agencies and other government-related entities listed in the statutory definition of "employer," but who are not directly employed by the District of Columbia government. *See* Def.'s Mem. at 14 (arguing that "the statute does not provide a right of action against other employers aside from the District of Columbia"). Defendant's reading therefore simply cannot be correct. Accordingly, the court concludes that, for purposes of the DCPWA, the "District" includes NFPHC.[7]

Plaintiff thus may proceed with his DCPWA claim.

III.

Finally, the court turns to Plaintiff's breach of contract claim, which is premised on the allegation that Defendant promised Plaintiff that he would be employed for a period of at least six months, but terminated him before that period expired. *See* Second Am. Compl. ¶¶ 116–19. Defendant maintains that Plaintiff's claim must be dismissed because it rests "on the scant allegation that someone allegedly told [Plaintiff] that he would be employed for six months." Def.'s Mem. at 15. Plaintiff need not, however, "identify by name which employee(s) made the agreement when pleading a breach of contract claim." *Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010). At this stage, "it is enough for the plaintiff to describe the terms of the alleged contract

---

[7] The court cannot, as Plaintiff has suggested, simply substitute the District of Columbia for NFPHC. *See* Pl.'s Opp'n at 3 n.7. By statute, "the District of Columbia and its officers and employees shall not be liable for and may not be made a party to any lawsuits or claims arising from the operation of the Corporation." Thus, the D.C. Council explicitly forbade the kind of substitution proposed by Plaintiff.

9

and the nature of the defendant's breach." *Cf. Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015) (evaluating case under D.C. Super. Ct. Civ. R. 12(b)(6)) (citing *Nattah*, 605 F.3d at 1058). Plaintiff's Second Amended Complaint does just that. It outlines the essential terms of Plaintiff's agreement to join NFPHC as its Chief Compliance Officer, including salary, benefits, and job responsibilities. Second Am. Compl. ¶¶ 13–15. The complaint also states that someone—Plaintiff does not specify who—told him that "his start date would be on April 6, 2015, and that he was employed for a minimum period of 6 months." *Id.* ¶ 14. Plaintiff claims that Defendant breached its employment agreement by terminating him before the end of the six-month period. *Id.* ¶ 116–17. These allegations are more than sufficient to state a claim for breach of an employment contract.

IV.

For the foregoing reasons, the court concludes that Plaintiff's Second Amended Complaint sufficiently pleads retaliation claims under the FMLA, DCHRA, D.C. FMLA, and the DCWPA. It also makes out a sufficient claim for breach of contract. Defendant's Motion to Dismiss is therefore denied.

Dated: July 27, 2018

Amit P. Mehta
United States District Judge