**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JOHN LOTT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-01546 (APM) |
| | ) | |
| NOT-FOR-PROFIT HOSPITAL | ) | |
| CORPORATION d/b/a/ UNITED MEDICAL | ) | |
| CENTER & THE DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

The District of Columbia established Defendant Not-For-Profit Hospital Corporation ("NFPHC") "as an instrumentality of the District government . . . which shall have a separate legal existence within the District government." D.C. Code § 44-951.02(a). Plaintiff John Lott is the former Chief Compliance Officer of NFPHC. Among Plaintiff's claims against his former employer is one arising under the anti-retaliation provision of the federal Family and Medical Leave Act ("FMLA"). In a motion for judgment on the pleadings, Defendant argues that it enjoys sovereign immunity from suit as to Plaintiff's FMLA claim. Its assertion of immunity is a complicated one, but once recognized, Defendant maintains, the court also must decline to exercise supplemental jurisdiction over Plaintiff's remaining D.C.-law claims and therefore must dismiss this action in its entirety.

For the reasons that follow, the court finds that NFPHC is not immune from suit for claims arising under the anti-retaliation provision of the FMLA. The court therefore has subject matter

jurisdiction over Plaintiff's FMLA claim, and it denies Defendant's Motion for Judgment on the Pleadings.

## II. BACKGROUND

### A. Factual Background

Plaintiff asserts a single federal claim of retaliation under the FMLA and four claims under District of Columbia law: (1) a violation of the D.C. Whistleblower Protection Act, (2) retaliation under the D.C. Human Rights Act, (3) retaliation under the D.C. Family and Medical Leave Act, and (4) breach of contract. *See* Second Am. Compl., ECF No. 31, ¶¶ 76–119. Of greatest relevance to Defendant's motion is Plaintiff's FMLA claim. As to that claim, Plaintiff alleges that he engaged in protected activity when he repeatedly protested the firing of a co-worker, Sonia Edwards, while she was on FMLA leave. *See id.* ¶¶ 95–98. Following Edwards's termination, Plaintiff met with Defendant's then-Chief Executive Officer to inform him that the hospital "has an obligation to be in compliance with the laws and that they cannot terminate individuals who are on FMLA." *Id.* ¶ 48. A day later, on June 9, 2015, Plaintiff asked the Executive Vice President ("EVP") to rescind Edwards's termination, but the EVP refused to do so. *See id.* ¶ 49. On July 20, 2015, Plaintiff notified a newly-hired CEO that Edwards needed to be reinstated because she was unlawfully terminated under the FMLA. *See id.* ¶ 60. Defendant terminated Plaintiff ten days later on July 30, 2015. *See id.* ¶ 53.

Plaintiff claims he was fired in retaliation for his protected activity. *See id.* ¶¶ 99–100. Plaintiff bases his claim on the close temporal proximity between his termination and his "object[ion] to the violation of the FMLA laws of a co-worker." *See id.* ¶ 100.

### B.   Procedural History

Defendant's present motion for judgment on the pleadings is not its first to dismiss all claims.   Twice before, Defendant moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), but ultimately the court determined that Plaintiff's amended pleading stated plausible claims.  *See Lott v. Not-For-Profit Hosp. Corp.*, 296 F. Supp. 3d 143 (D.D.C. 2017) (granting motion to dismiss but permitting leave to amend); *see also Lott v. Not-For-Profit Hosp. Corp.,* 319 F. Supp. 3d 277 (D.D.C. 2017) (denying motion to dismiss Second Amended Complaint).  The day before the initial scheduling conference, Defendant filed the instant motion, asserting sovereign immunity for the first time as to Plaintiff's FMLA claim.  *See* Def.'s Mot. for Judgment, ECF No. 44, Def.'s Mem. in Support of Mot., ECF No. 44-1 [hereinafter Def.'s Mem.]. Notwithstanding Defendant's latest effort to dismiss all claims, the court entered a scheduling order because more than two years had passed since Plaintiff commenced this action.  *See* Scheduling Order, ECF No. 45.  Discovery is scheduled to conclude on July 31, 2019.  *Id.*

### III.   ANALYSIS

Defendant's assertion of sovereign immunity requires an Erector Set to construct.  It starts with the foundational contention that, as an instrumentality of the District of Columbia government, NFPHC enjoys the District's sovereign immunity.  *See* Def.'s Mem. at 8–10. Defendant then contends that, as to Plaintiff's FMLA anti-retaliation claim, neither Congress nor the D.C. City Council has waived its immunity.  As for Congress, Defendant correctly points out that in *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012), the Supreme Court held that, although Congress properly abrogated the sovereign immunity of states and the District of Columbia insofar as the FMLA grants employees certain rights and protections to take leave for family care, such abrogation did not extend to the FMLA's "self-care" provision, that is, the

portion of the FMLA that grants employees rights and protections to take leave due to their own health problems. Def.'s Mem. at 6–7, 16–18. Because Plaintiff's retaliation claim rests on the self-care provision, Defendant posits, the holding of *Coleman* means that Plaintiff cannot maintain his claim. *Id.*

That then leaves the D.C. City Council. As to it, Defendant maintains that the District's legislative body did not waive NFPHC's immunity from suit as to claims under the FMLA like the one advanced by Plaintiff. Defendant so argues even though NFPHC's organic statute contains a "sue and be sued" clause. *See id.* at 10–14.

For his part, Plaintiff does not challenge Defendant's general contention that NFPHC is imbued with the sovereign immunity of the District. *See* Pl.'s Opp'n to Def.'s Mot., ECF No. 47 [hereinafter Pl.'s Opp'n], at 3. Instead, he argues that the District waived NFPHC's immunity from suit by including a "sue and be sued" clause in the hospital's organic statute ("NFPHC Act"). *Id.* at 2–3 (citing D.C. Code § 44-951.06(1) (providing that "[t]he Corporation shall have the power to [s]ue and be sued in its corporate name")).[1] The court therefore turns to the disputed issue of waiver.[2]

## A.    Presumption of Waiver

The court begins with a threshold inquiry: whether the District should be *presumed* to have waived sovereignty immunity as to NFPHC based solely on the "sue and be sued" clause. In

---

[1] Courts often treat the issue of whether a government waived immunity as distinct from whether a government conferred sovereign immunity to an instrumentality. *See Watters v. Washington Metropolitan Area Transit Authority*, 295 F.3d 36, 39–40 (D.C. Cir. 2002) (acknowledging that the District of Columbia conferred its respective sovereign immunity on to WMATA before analyzing whether "WMATA's sovereign immunity has been waived"); *see also George Hyman Construction Company v. Washington Metropolitan Area Transit Authority, et al.*, 816 F.2d 753, 759 (D.C. Cir. 1987) ("[W]e must determine whether WMATA has sovereign immunity from liability for prejudgment interest absent a waiver and, if so, whether a waiver of that immunity in fact exists.").

[2] Because the question of immunity goes to the court's subject matter jurisdiction, the court arguably should first satisfy itself that the District in fact conferred its immunity upon the NFPHC. But because the court holds that the hospital's organic statute waives any immunity as to Plaintiff's particular claim, the court need not reach that broader issue.

*Ogugua v. Not-For-Profit Hospital Corporation*, this court found that the presumption of waiver applies. *See* 217 F. Supp. 3d 76, 78–79 (D.D.C. 2016) (finding that NFPHC's sue-and-be-sued clause "establishes a presumption in favor of finding a full and complete waiver of sovereign immunity"). The court rested this conclusion on cases addressing sovereign immunity for *federal* instrumentalities whose organic statutes contained sue-and-be-sued clauses. *See id.* at 78 (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The court now recognizes, with the benefit of more thorough briefing, that its finding of a presumption of waiver in *Ogugua* was a mistake.[3] As Defendant correctly points out, *see* Def.'s Mem. at 14–16, the presumption of waiver that applies to a *federal* instrumentality based on a *federal* statutory sue-and-be-sued clause does not apply to a *state*—or, in this case, a District—instrumentality unless the state law itself recognizes such a presumption. For instance, in *George Hyman Construction Co. v. Washington Metropolitan Area Transit Authority ("WMATA")*, the D.C. Circuit looked to Virginia law (at the parties' urging), and not federal law, to determine whether the transit agency's sue-and-be-sued clause created a presumption of waiver. 816 F.2d 753, 759–60 (D.C. Cir. 1987). The court held that, under Virginia law, a sue-and-be-sued provision in a state instrumentality's organic statute "[does] not constitute a waiver of any sovereign immunity." *Id.* at 760.

Here, Defendant insists that, like Virginia, the District of Columbia does not follow the federal presumption of waiver. *See* Def.'s Mem. at 16. But the decisions upon which Defendant relies—*Grunley Construction Co. v. District of Columbia*, 704 A.2d 288, 290 (D.C. Cir. 1997); *Chewning v. District of Columbia*, 119 F.2d 459, 460 (D.C. Cir. 1941); and *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394 (D.C. 1989)—are inapposite. None of those cases squarely address whether the presumption of waiver applies to an *instrumentality* of the

_____

[3] In *Ogugua*, "[d]efendant [did] not identify or otherwise acknowledge [the sue-and-be-sued] provision, let alone attempt to rebut the presumption." *Ogugua*, 217 F. Supp. 3d at 78.

District of Columbia.  Rather, each of those cases involves the sue-and-be-sued provision in the Act establishing the District of Columbia as a municipal government ("Establishing Act"), D.C. Code § 1-102, which courts consistently have held does not waive *the District's* sovereign immunity.  As the Supreme Court has recognized, the words "sue and be sued" can retain a different meaning depending on their context.  *See People of Porto Rico v. Rosaly y Castillo*, 227 U.S. 270, 275 (1913) ("Unquestionably the [sue-and-be-sued] provision, disconnected from its context, would sustain the conclusion that there exists a general liability to be sued without reference to consent.  Indeed, the words 'to sue and be sued' are but a crystallized form of expression resorted to for the purpose of aptly stating the right to sue and the liability to be sued, which springs from a grant of corporate existence, private or public. But this does not solve the question here arising, which is the meaning of the words in the act under consideration, for it may be that like words may have one significance in one context and a different signification in another.").  Thus, the fact that courts have interpreted the Establishing Act's sue-and-be-sued clause as not waiving the District's sovereign immunity does not mean that, as a general matter, District of Columbia law rejects the federal presumption of waiver for instrumentalities.  The case law is simply silent on that question.[4]

Accordingly, the court cannot say that a presumption of waiver—or no presumption at all—applies with respect to the sue-and-be-sued clause under the NFPHC Act.  Ultimately, however, the court need not predict whether the D.C. Court of Appeals would embrace the federal presumption of waiver.  Waiver as it relates to Plaintiff's FMLA claim is plain on the face of the NFPHC Act.

---

[4] Indeed, to its credit, Defendant concedes that "the District of Columbia Court of Appeals has yet not issued a controlling precedent on the precise questions of whether and under what circumstances a District government instrumentality with a sue and be sued clause in its organic statute partakes of the District's unwaived sovereign immunity."  Def.'s Reply Mem. in Support of Mot., ECF No. 49, at 9.

**B. Statutory Waiver**

Under District of Columbia law, "[a] waiver of sovereign immunity must be 'unequivocally expressed in statutory text.'" *Tucci v. District of Columbia*, 956 A.2d 684, 695 (D.C. 2008) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Waiver may be found "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Watters v. Washington Metropolitan Area Transit Authority*, 295 F.3d 36, 40 (D.C. Cir. 2002) (quoting *Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 221 (D.C. Cir. 1986)).

The text of the NFPHC Act "leave[s] no room for any . . . reasonable construction" other than that the District has waived NFPHC's immunity against claims arising under federal and local employment laws. The NFPHC Act makes clear that the District's takeover of the hospital did not in any way diminish the protections afforded to the hospital's employees. The NFPHC Act expressly states that, "[t]he employees of United Medical Center shall be transferred to [NFPHC] with the same rights and obligations they enjoyed as employees of the United Medical Center." D.C. Code. § 44-951.10(a). The United Medical Center ("UMC")—NFPHC's predecessor—was a private hospital that came into existence from a public-private partnership between the District and Greater Southeast Community Hospital. *See Direct Supply, Inc. v. Specialty Hospitals of America, LLC*, 878 F. Supp. 2d 13, 17 (D.D.C. 2012). As a private hospital, the nation's employment laws, including the FMLA, applied to UMC. *See* 29 U.S.C. §§ 2611(4)(A)(i), 2617(a)(1) (applying to businesses with fifty or more employees).[5] By ensuring that NFPHC employees would possess "the same rights . . . they enjoyed as employees of [UMC]," the D.C. Council made clear that, just as UMC was subject to suit under statutes that protect the rights of

---

[5] If the court is mistaken about the FMLA applying to UMC, the court may reconsider this decision.

employees, so too is NFPHC. Surely, if the D.C. Council had intended to limit the hospital's potential liabilities from its employees—considering it exposed NFPHC to the sue-and-be-sued provision and provided NFPHC employees with the same rights as they had under a private employer—it would have said so. But NFPHC's organic act contains no such language.

Furthermore, other statutory provisions show that the D.C. Council contemplated that hospital employees would continue to enjoy the full panoply of rights of redress against their employer. For example, the NFPHC Act provides that, "[s]ubject to federal and District law, [NFPHC] shall assume and be bound by all personnel contracts and existing collective bargaining agreements with labor organizations that represent employees transferred to [NFPHC]." D.C. Code § 44-951.08(c). It is simply not reasonable to believe that the D.C. Council subjected NFPHC to federal collective bargaining agreements, but not to the full protections of the FMLA. Similarly, the NFPHC Act states that UMC employees would continue to be subject to the personnel system of UMC, "[u]ntil [NFPHC] establishes a personnel system *subject to applicable laws*." D.C. Code § 44-951.08(b) (emphasis added). Once more, Defendant's asserted non-wavier cannot be squared with the fact that the D.C. Council contemplated that NFPHC's personnel policies would be "subject to applicable laws." And, finally, the NFPHC Act contains a broad provision that allows the hospital to retain outside counsel as needed for litigation: "[NFPHC] may retain outside counsel . . . at its own expense to provide representation for [NFPHC] and its officers and employees in actual or anticipated litigation related to their official duties and functions or in any other legal proceeding, lawsuit, grievance, or arbitration filed against [NFPHC], its officers, or its employees." D.C. Code § 44-951.14(c). This provision demonstrates that the District anticipated that NFPHC, as an entity engaged in a commercial enterprise, would need to

defend against a host of potential claims from a variety of litigants.  This clear expectation to "be sued" evidences the District's waiver of immunity for NFPHC.

To be clear, the court does not hold that the NFPHC Act waives immunity as to all potential claims against the hospital.  The court need not go that far.  *See Watters*, 295 F.3d at 40 (observing that governments can provide "specific" and "partial" waivers of immunity to instrumentalities, as opposed to a general waiver of immunity).  The court's narrow holding is simply this:  the NFPHC Act's "sue and be sued" clause, when viewed in the context of the entire statute, "leave[s] no room for any other reasonable construction" of the NFPHC Act, *id.*, other than that NFPHC is not immune from suit for claims arising under employment laws, such as the FMLA.  Accordingly, the court has subject matter jurisdiction over Plaintiff's anti-retaliation FMLA claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings is denied.

Dated:  March 7, 2019

Amit P. Mehta
United States District Judge